Take your time getting set up. Our third case is number 22-12335, TaxiNet Corporation et The central issue in this case is whether the jury is entitled to believe the defendant, Santiago Leon, when he takes the stand and over the course of two days of trial testimony testifies seven different times that the value of a concession granted by the government of Mexico City was worth 2.4 billion dollars and that that was a conservative estimate. Let me stop you there for a second. Let me assume that that's correct and that you're right on that point for purposes of my question. Okay. What is the theory of damages for unjust enrichment that you pursued below and are asserting on appeal? Because there are different ways of calculating damages for unjust enrichment under Florida law, right? Yes, yes that is. Tell me the theory that you are, the theory you presented below to the jury and the theory that you are asserting on appeal. The value of the services to the party unjustly enriched, that was the jury instruction and that is from really many cases but for our purposes it's the Kane case where that theory allows you to recover your contribution to the result achieved. The result achieved and the whole purpose of this endeavor and this enterprise was to get a concession to operate taxi nets application. So there's nothing wrong with our theory of of damages and the jury did have the standard. The jury did have in the evidence multiple multiple times what the ultimate value of it is. But how does the ultimate value alone and I know there was a little bit more to it than that. I mean there was the fact that the 25 percent offer and that but but you know the jury found that the value occurred through September 15, September 2015. I guess it was right? Is that right? September 25th of 2015. Yes. Okay and the 1.6 the the valuation I guess there were a couple different valuations. There's the the Goldman Sachs valuation which occurs in 2018. So three years later after there's a lot of water bridge and other things happened and according to Mr. Leon I guess there's there's the development of an entirely new app. You know you've got a lot of different things happening. So how do we get from under Florida law right where we have to show what the value of that is. How do we get from that to the period of time that the jury found that the value was bestowed? Well I so I'll start with the case law which all we need is a rational basis by the jury. And I think that you mentioned the jury verdict form had put a time range. But under the rule 50 analysis we're not supposed to look at the verdict form. We're just supposed to look at the evidence at trial. And so I think to the last part of your honor's question is we have a 2.4 billion dollar valuation that's done 2018 and we're looking at a benefit that was conferred in the 2015 range. But I think that there was a on that issue the very reason that the Goldman Sachs valuation in 2018 was for the concession that was granted. And our our theory of the case was the concession was granted in September of 2015. Our work on this continues all the way through October. There was evidence of the taxi nets application. And so and this was a 10-year concession agreement. So our position was a 2018 valuation is right in the heart of the relevant time period. And because the the agreement had not changed because the valuation or the concession agreement was struck in 2015 because of accidents. But let's talk about this for a second. Let's assume for example that that in fact the taxi net application at that time when the award was made only worked for 150 to 150 cabs. Okay and it couldn't have worked for the entire you know number of cabs were going to be using it. If that were the case and and changes weren't made to the app there weren't a new app developed. Then looking back in 2018 you wouldn't say that it was worth 2.4 billion or whatever it was that Goldman Sachs said it was worth. Because it wouldn't have the ability to be able to be effective for all of those cabs right. I mean you would agree with that? I do not agree with that judge for this reason. Goldman Sachs was valuing the concession. The concession which is an exclusive license assumes the operation of a working application. If we accept your hypothetical and we disagree with it. We think that there was evidence in the record and this was hotly disputed that taxi nets software did work. But to if I accept your concession it would put pressure on having to come up with a working application. But our theory of the case was Leon cut us out of this deal. He shouldn't have done it. Taxi the tax net application could have gotten up and running with a lot less investment much faster. And the fact that he had to invest in a an application from the ground up was a result of the fact that he didn't know what he was doing. And so I think that we need to separate or we would like to separate and we think the evidence supports this. The idea of the concession being an exclusive license. A license has value in of itself apart from the business that's going to operate it. Like a liquor license itself has a value unattached to the restaurant or the bar. And this is what was actually valued by Goldman Sachs. So I think that when the concession was granted for lack of a better term when was it supposed to begin? I don't think that there was a specific date on that. There certainly was pressure that was coming from Leon to get it up and running. But how could a concession be granted without knowing a start date? Well you're right there was a concession agreement and I don't know if that was one of the specific terms of it. I don't know what the time frame was for getting this up and running. We do know that the application that ultimately came in that Leon took a long to develop that didn't get implemented until 2018 and the concession was still very much in place and still had its value. So you know our position is look there this was what the trial was about. This was one of the central issues for the jury to decide and we think it was a classic jury question. Did Taxi Net's application work? There was there was competing evidence about it. Let me ask you a question about the evidence. The district court found that there was no evidence to provide a market value for the business plan, the know-how, and the technology that Taxi Net purportedly provided to Leon. Right. Separate and apart from the concession. Does that correctly reflect the record? Well I would say that no one sort of put a value on Taxi Net application. I would agree with that. But there was certainly evidence of you know the business that was backing that. But our theory of damages was entirely or substantially based on the valuation of the concession and our percentage contribution. And that is a valid. I understand that that's your theory of damages. My question is is if speaking only for myself if we disagree with that as the theory of damages what corpus of evidence is there as to the know-how? Did the district court get it right that there is none? Well I that is an alternative theory of damages. I believe there was testimony about the value of the Taxi Net application because it did have a value. And we do know that Leon tried to buy the Taxi Net application after he cut them out of the deal. So I think that there was probably evidence that the services itself in the business and the know-how that could have been valued. But ultimately that was not our theory of damages. And it didn't have to be our theory of damages. We think that it was appropriate to say look we want a percentage of what we contribute just like the Kane case and just like other cases. So what do we do at cases like Alvarez that you know talk about it's entirely speculative. Speculative it seems almost I mean it seems really close to being on point here to say we get a percentage of what it's what you know what it's ultimately worth or what someone has calculated it to be ultimately worth based on contributions early in time. Yes well you know Alvarez I think was fact-driven. This was a boxer. He could have broken his neck in the next fight and his career's over. And I think let's say that let's say that no let's assume just for purposes of the question that the app only worked for 150 to 150 taxis. That no further app was created to correct this problem. Why isn't that really similar to the boxer having broken his neck? Well I think that there's other distinctions and that yeah that's a good point your honor. Probably the biggest distinction was the defendant in Alvarez didn't sit on the stand and say I'm going to win x number of fights and I'm going to make 50 million dollars over my career. In this case we did have that admission but really it was ultimately a failure of evidence in this case. The concession and the license agreement in this case could be independently valued and to answer your question if it was a situation where we don't have a business they could have sold the concession or they could have negotiated a deal to still obtain value out of it. So it wouldn't have been the end of the end of the day for our theory of the case. Now we'd ask well I'll save my time for the rest. Okay I'll ask you one more question Mr. King. Part of your argument for defending and I'll ask Mr. Contero the reverse question. Part of your argument for defending the jury verdict is that the Goldman Sachs report should have been admitted. Yes. You can't make that argument to defend the jury verdict right because the jury never saw the report itself and if the evidence was excluded you can't defend the jury verdict on evidence that was never presented. I understand making that argument in the context of your argument that at worst you get a new trial but you can't defend a jury verdict on evidence that was never presented and was excluded right. Yes our argument is that the 2.4 billion dollar valuation was in evidence. I get that. I get that based on the testimony of Mr. Leon etc. I get that but the argument that the report should have been admitted that's a new trial argument that's not a defense of sufficiency of the verdict argument right. I think under Reeves we're looking at the admissible evidence I think the court can consider looking at the entire record evidence that should have come in and it's rule 50b analysis. Really? Yes sir. So you mean that in a case involving sufficiency of a verdict the court on appeal takes a look at evidence that was excluded and never presented? Well it was presented it was moved into evidence but it was excluded the jury never saw it. That's right Judge. We look at it though? My understanding of Reeves and my reading of Reeves is that admissible evidence is what counts on the rule 50b analysis. Potentially admissible or like admissible like it was admitted and it was admissible? I would say an exhibit that you should have admitted it. The jury never sees it? The jury never sees it. We can take that into account? Yes. Woo Reeves. Wow. But our position is we don't need to go there because the valuation was in there. Okay thank you very much Mr. King. Mr. Conte let me see if I can still button this jacket. May it please the court Raul Cantero along with my colleague Veronica Gordon and co-counsel Herod Payton for Santiago Leon. I know Judge Jordan alluded to a question for me so your honor what's your question? The reverse of the question I asked Mr. King which is in part the district court said that Mr. Leon's testimony about the valuation was based on hearsay. And my question is so what? That's true. If evidence is admitted right and it turns out that the evidence was improperly admitted you can take that into account in granting a new trial but not in determining sufficiency of the verdict right? That's right but Judge Moreno um articulated several other bases. Oh no I get that and I want to hear about those but I'm just saying you can't just you can't just say for example this unobjected to testimony was hearsay therefore I'm cutting it out of the sufficiency analysis. I understand that but the evaluation itself the testimony about the valuation does not go to the proper measure of damages. That's a proper measure and to answer your first question Judge at the beginning of this argument which is what is the measure of damages? They tried this case below and they have litigated this case on appeal as a breach of contract case. That was their measure of damages even though Judge Moreno had granted summary judgment on the breach of joint venture agreement. Those are the damages that they sought below and those are the damages they seek below. What else is there when you say and Mr. Nobola the CEO of tax unit in his direct testimony testified and and on cross two many many times not just once not just twice not just three times that what he wanted was 60 percent of 2. billion dollars 60 percent of lucide 60 percent of the 2.4 million dollars that we're seeking from the government of Mexico. Where does that 60 percent come from from his oral agreement that he said he had which was unenforceable under the statute of frauds. The real measure of damages and the measure they did not use even though they could have was what is the value of the services that Mr. that tax unit provided to Mr. Leon. Mr. Leon was the defendant not lucide. Mr. Leon was the defendant. We argue that there was no benefit at all to him and that's another basis for affirmance but the issue is what is the value of the services provided to Mr. Leon. Now they could have said they could have come in and brought an expert and said what Icreon spent in developing this app which is as Judge Rosenbaum alluded to insufficient inappropriate and totally totally unready for the Mexico market but such as it is this is what caused to develop this application. This is what somebody would have spent in the to answer Judge Nasco's question in developing a business plan, developing the know-how, developing the technology that we get whatever we gave you. There was no evidence whatsoever by the way of any know-how that they provided us or the value of anything. That's not what they presented. Why? We don't know but I assume it's because it would have been minuscule compared to seeking a 2.4 billion dollars which has nothing to do with any value of what they were giving and that's your honor Judge Jordan what Judge Moreno alluded to in the judgment and and I will let me just show you some of the parts of here but here's the part that partially concerns me on page nine of his order Judge Moreno twice said that the valuation is based on hearsay and is not in evidence. That's just wrong. Yes but us taking that away let's assume the valuation is in evidence. He also says beginning on page two throughout the trial plaintiff asserted entitlement to 64 percent of a 2.4 billion dollar valuation done three years after it conferred a benefit on Leon. This percentage is not related to the value of the service or benefit taxing purportedly conferred on Leon but is instead based on discussions never finalized concerning taxing as potential ownership interest in a future company. He could have ended it there and signed it because that's all you need to say and that's all you need to look at to affirm the judgment because again the entire basis of their argument and of their case the theory of the case was based on breach of contract damages and if they get a anything based on the 2.4 billion or even the 1.6 billion or the 450 million all these valuations then it eviscerates the statute of frauds then the statute of frauds means nothing. Why? Because if you don't have an oral contract that's okay you can just assert an unjust enrichment claim and seek precisely the same damages that you would have in a breach of contract claim and so it cannot be the case that they can base it on a valuation on breach of contract damages instead of proving at trial what the value of whatever you provided to business plan know-how technology and by the way that comes from the closing argument that was their theory at trial that's what was given was business plan know-how technology now they say it's the entire concession but that's not what they argued at trial business plan know-how technology they offered no evidence whatsoever on those what the value of that that was given to them and by the way now they say well give us a new trial well if you look at their argument on new trial they don't want a new trial so they can go ahead and tell you well what was the value of this flawed plan this flawed app that we had that you couldn't use they want a retrial so they can admit the Goldman Sachs valuation that's what they said let us remedy it by actually introducing this valuation this report into evidence which is obviously just as irrelevant as it is now and to address also Florida cases generally say with regard to the value of services rendered or obtained when those services later lead to a lucrative contract how do you how do you go about mechanically trying to figure out or place a value on those services when there's a later contract that can be valued well your honor for that I would allude to the Hughes case which they cite which is a case from this court and Hughes is interesting because in Hughes the plaintiffs sought lost profits they had contracted to be a analyst and consultant for a a fund based on mortgage-backed securities and he did work for the company the company then cut off relations didn't pay him anything and he sought lost profits and this court said well actually the district court instructed the jury you don't get lost profits for that but he also introduced evidence of the value of his services to the company but under unjust enrichment the narrow damages that he would get in which he proved that trial and was affirmed was I worked for I don't know 21 months that equals x number of hours I think I said 3300 hours I worked on this and I would estimate it at 400 an hour and therefore I should get 1.3 million dollars and the jury awarded 1.25 million dollars and this court said well that's close enough the the judge instructed the jury they could not consider lost profits so we're going to assume they obeyed the judge's order and the 1.25 million is pretty close to 1.3 million so we're going to assume that the jury based it on the value that he said his services were worth so in a unjust enrichment claim it doesn't matter they cited the Cain case Cain was a a totally different situation where it was uh attorneys fighting for fees and one of the attorneys that filed a charging lead in a in a contingency fee case and said I think I should get 50 percent I did 50 percent of the work and so he gave the uh the judge state court judge I think uh gave a percent even the federal gave a percentage of the the ultimate uh judgment against the defendant that happens all the time in uh attorney charging leads or one which attorney is placed uh replaced by another that's a totally situation than a a nascent company without any business whatsoever that um the the evidence showed could not use uh what was brought to them developed its own app and and ultimately that was valued at a certain amount three years later after the app had been put in about 1,250 cars and there was a funding to roll it out to 138,000 cars they had all the funding for that three years later and all of this kind of evidence must be taken in the light most favorable to Mr. Leon because the jury found negligent misrepresentation it actually found in favor of Mr. Leon that taxi net had negligently but misrepresented uh what was uh wrong what was right when this happened and the app wouldn't work um the evidence was we misrepresented that it was working in 5,000 cars when there was testimony as 150 cars who judge robeson gone said um and there were a lot of other problems especially scalability that it wasn't ready for primetime wasn't ready to be rolled out uh or could even work for that many cars for more than 100 times the cars that even they said were in in yes in ecuador and as early as um august of 19 of 2015 during these while we're talking with the government of mexico city Mr. Noboa tax units ceo is simultaneously writing to the developer of the app um august 19 saying we need to talk about the app there are serious problems with it that's him talking to his own app designer so there was plenty of evidence from which the jury did conclude that there were negligent misrepresentations and therefore whatever value uh that app had uh was certainly not uh the value of a different app uh three years later um that we said was worth 2.4 billion and by the way in a case like this you would assume that the plaintiff would bring evidence showing this is the taxi net app this is the lucy app and look at all the similarities the lucy app is this and that and the other thing same thing as the taxi net app well Mr. Nobola the representative of taxing conceded on cross the lucy app and he had never hired anybody to compare the lucy app to the taxi net app and so they had no basis whatsoever to be able to say you copied it because they don't know they never saw it and so there was no evidence in the record to support any value for taxing it whatsoever that reason i think i i suggest the court affirm the judgment in full and not remand for a new trial on anything if the court has no further questions i'll rest on my brief further arguments all right thank you very much so same question for you Mr. King what what do Florida cases say about valuing services provided or services obtained when there is a later lucrative contract uh that's it's the cane case that you can participate in your contribution certainly the work that the lawyers in the cane case did came before the settlement agreement and after the settlement agreement they came in and said we we deserve a piece of this because of everything that we did without us you're not settling that case and they had evidence uh that was legally sufficient for the court to reason that the the lawyers who laid the groundwork for the settlement could get 50 now we think that that's on point with this case i think cane um wasn't there an expert who testified about the value of lawyer services and didn't the trial court need a concrete finding about the value of the that the plaintiff lawyers provided in the form of their advice they that that is true but our position in this case is once we take this 2.4 billion dollar valuation and say that that is in evidence the jury's charge was to determine uh what percentage did we contribute to this benefit this benefit was this incredibly valuable uh concession agreement and uh the jury did have evidence we didn't have an expert but there was evidence in the record contemporaneous evidence about what the parties understood tax net was bringing to this deal the 60 we asked for was because the tax net was to be the 60 owner of lucide and i think that he had mentioned the lucide app the lucide app originally was to be the tax net application and so that was a measure of what uh tax net could contribute later that he mr can title says that's essentially asking for breach of contract damages because your contract claim was essentially that there was an agreement where whereby you would own a percentage of the company those weren't contract damages because what we were trying to do and what we actually did achieve in doing uh with the evidence in the record was to benefit conferred this wasn't a situation where we were enforcing an existing contract we were suing for unjust enrichment now look our theory was 60 we think that's what we contributed the jury found 12 and a half percent and we we know now because of the verdict form although we're not supposed to consider that that they get that number from leon's off we have a contemporaneous email from leon saying you taxi net contributed 25 so i will give you 25 of this business that is a rational basis and that is we think compelling evidence for the jury to take that number and use it to compute a proper damages award for unjust enrichment we would ask the court to you